1
2
3
4
5
6
7
8
## UNITED STATES DISTRICT COURT
9
## SOUTHERN DISTRICT OF CALIFORNIA
10
11 MARK OUELLETTE,                          Civil No. 06cv2489-BEN (WMc)
12                          Petitioner,
                                            **AMENDED REPORT AND**
13      vs.                                 **RECOMMENDATION OF UNITED**
                                            **STATES MAGISTRATE JUDGE RE**
14 ROBERT J. HERNANDEZ, Warden,             **DENIAL OF PETITION FOR WRIT**
                                            **OF HABEAS CORPUS**
15                          Respondent.
16
17      This Amended Report and Recommendation is submitted to United States District Judge
18 Roger T. Benitez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United
19 States District Court for the Southern District of California.
20                                  **I.**
21                     **FEDERAL PROCEEDINGS**
22      Mark Ouellette (hereinafter "Petitioner"), is a California prisoner proceeding by and
23 through counsel with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.
24 (Doc. No. 1.)  Petitioner pled no contest to second degree murder in the killing of his girlfriend's
25 two and one-half year old son in 1993, and was sentenced to a state prison term of fifteen years
26 to life.  He challenges here the finding of unsuitability for parole made at his second parole
27 hearing, held in 2005, and the decision to defer the next parole hearing for three years, claiming
28 that he has been denied due process in violation of the Fourteenth Amendment.

Respondent initially moved to dismiss the Petition on the basis that Petitioner had failed to exhaust his state court remedies with respect to certain claims. (Doc. No. 6.) After the motion was denied, Respondent filed an Answer accompanied by a Memorandum of Points and Authorities in support thereof. (Doc. No. 16.) Respondent contends that: (1) Petitioner has no federally-protected liberty interest in parole, and (2) even if this Court recognizes such an interest, Petitioner received all the process he was due in connection to the deprivation of that interest, and the adjudication of the due process claim by the state courts was therefore neither contrary to, nor involved an unreasonable application of, clearly established federal law. (Answer ["Ans."] at 6.)

On February 20, 2008, the undersigned Magistrate Judge issued a Report and Recommendation. (Doc. No. 19.) On February 25, 2008, Petitioner filed a Traverse along with the declaration of counsel stating that a Traverse had been submitted to the Court on December 31, 2007, but had not been filed or docketed. (Doc. No. 20.) The Court subsequently vacated the Report and Recommendation, and now issues this Amended Report and Recommendation in which it considers the arguments presented in the Traverse.

## II.

## STATE PROCEEDINGS

On November 16, 1993, Petitioner was sentenced to a state prison term of fifteen years to life following a conviction for second degree murder imposed as a result of a no contest plea. (Lodgment No. 1.) His minimum parole eligibility date was November 6, 2002. (Lodgment No. 4 at 1.) Petitioner challenges here the decision of the Board of Parole Hearings made after his second parole eligibility hearing, held on August 10, 2005, finding him unsuitable for parole and deferring the next parole hearing for three years.

Petitioner challenged the unsuitability finding in a habeas petition filed in the state superior court on January 4, 2006. (Lodgment No. 7.) That petition was denied on the merits in a three-page written order filed July 10, 2006. (Lodgment No. 8.) Petitioner presented the same claims in a habeas petition filed in the appellate court on July 25, 2006. (Lodgment No. 9.) That petition was denied on the merits in a brief order filed August 9, 2006, which stated in

relevant part: "There is some evidence to support the Board's decision. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 667.)" (Lodgment No. 10.)  Petitioner filed a petition for review in the state supreme court on August 16, 2006, presenting the same claims. (Lodgment No. 11.)  That petition was summarily denied on October 25, 2006, without citation of authority or a statement of reasoning.  (Lodgment No. 12.)

### III.

### UNDERLYING FACTS

The following statement of facts is taken from the initial parole consideration hearing, which in turn was taken from the probation officer's report, and which was quoted and relied on by the parole board:

> The specific information was gleaned from the Probation Officer's report. And the record states, "On November 6, 1992, law enforcement responded to the victim's home regarding a rescue call.  The officer observed Inmate Ouellette giving CPR to a small child.  The child's lips were blue and his pupils were fixed. The child was cold, rigor mortis was present, and post-mortem lividity was observed.  The officer observed bruises on the child's lower left leg and on the left side of its face.  Inmate Ouellette admitted putting his hand over the child's face and shaking him until he stopped crying.  Inmate Ouellette grabbed the child's face and smothered him.  The autopsy revealed that the child had extensive internal injuries which included extensive bruising to the thymus organ which is a developmental organ, several broken ribs, damage to the back and body bruising that was not visible on the skin."
>
> For the record, this particular child was two and a half years old. Two-and-a-half-year-old boy.  "The autopsy concluded the cause of death from multiple traumatic injuries occurring within the last month of the child's life.  An investigation revealed the child was so fearful of Inmate Ouellette that he would stay in his room for six to seven hours without eating or using the bathroom. Inmate Ouellette had squeezed the child's cheeks so hard that he had developed canker-like sores in his mouth.  Inmate Ouellette had also picked the child up by his head on more than one occasion and carried him to bed.  Inmate Ouellette seemed surprised that the victim did not survive this treatment on the final occasion."

(Lodgment No. 4 at 13-14.)

Petitioner admitted this information was accurate, and admitted that he committed the offense.  (Id. at 14.)

At the conclusion of the parole hearing, the parole board made the following findings:

> The panel has reviewed all the information it received from the public and relied upon the following circumstances in concluding that you are not suitable for parole and that you would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time.

06cv2489

The main reason that we're going to deny you, sir, is because of the gravity of the offense in that this offense was especially heinous. It was cruel. It was callous.

We base that opinion on the fact that this crime involved the beating of a two and a half year old child over an extended period of time resulting in significant and fatal injuries to that child.

The offense was carried out in a dispassionate manner, and the autopsy revealed extensive internal injuries, which included extensive bruising, several broken ribs and damage to the back. There is no motive for this crime. And this was a two-and-a-half-year-old child who was very vulnerable to you, and particularly given the fact that he was living with you and you occupied a position of trust.

These conclusions are drawn from the statement of facts where according to the record, sir, law enforcement responded to the victim's home regarding a rescue call. The officer observed the Inmate Ouellette giving CPR to a small child. The child's lips were blue and his pupils were fixed. The child was cold, rigor mortis was present, and post mortem lividity was observed.

The officer observed bruises on the child's lower leg, left leg, and on the left side of his face. Inmate Ouellette admitted putting his hand over the child's face and shaking him until he stopped crying. Inmate Ouellette grabbed the child's face and smothered him.

The autopsy revealed that the child had extensive internal injuries which included extensive bruising to the thymus organ, several broken ribs, damage to the back and body bruising that was not visible on the skin.

The autopsy attributed the cause of death multiple traumatic injuries occurring within the last month of the child's life.

I would like to note for the record, sir, that during today's hearing you indicated that you had abused that child for approximately three months, for a three-month period prior to his death.

Furthermore, sir, the other thing that we did take into consideration in denying you today is your unstable social history which includes an extensive use of methamphetamine as well as the use of marijuana. And the record further does imply that you have an arrest for vehicle theft.

We do note for the record, sir, that the later psychological report is favorable. This particular report is authored by Staff Psychologist John Adam, A-d-a-m, and it's dated March 2001. And it states, "That within a controlled setting, Inmate Ouellette has proven himself to have excellent self control with a perfect record for ten years. If released to the community, it is very likely that he would continue to be violence free and maintain his very constructive and socialized behavior developed through his positive program at CDC. The only significant risk factor would be a return to methamphetamine dependence. And Inmate Ouellette appears very motivated to never let that happen again."

The hearing panel notes that responses to Penal Code Section 3042 indicate an opposition to a finding of a parole suitability, specifically, by the Los Angeles District Attorney's Office.

1            In a separate decision, sir, the hearing panel finds the prisoner has been
2    convicted of murder second and as such, it is not reasonable to expect that you
    would be granted parole at a hearing during the next three years.

3            So, as a result, sir, we're going to deny you for three years.

4    (Lodgment No. 4 at 79-82.)

5    **IV.**

6    **PETITIONER'S CLAIMS**

7        (1)  Petitioner was denied his Fourteenth Amendment right to due process because the

8    grounds recited by the Panel of the Board of Parole Hearings (hereinafter "Panel") to find him

9    unsuitable for parole, and the findings used to support those grounds, were arbitrary,

10   unsupported by any evidence, inapposite to the record, inherent in all second degree murders,

11   and/or irrelevant to Petitioner's current parole risk.  (Pet. at 7-9.)

12       (2)  Petitioner was denied his Fourteenth Amendment right to due process because the

13   factors relied upon by the Panel apply to special circumstance first degree murder cases, do not

14   establish a nexus to Petitioner's current parole risk, and do not satisfy the preponderance of the

15   evidence test required to demonstrate that Petitioner would pose an unreasonable risk of danger

16   to public safety if released.  (Pet. at 9-16.)

17       (3)  Petitioner was denied his Fourteenth Amendment right to due process because the

18   Panel relied on the unchanging facts of his commitment offense.  (Pet. at 17-25.)

19       (4)  Petitioner was denied his Fourteenth Amendment right to due process because the

20   Panel's decision to defer his next parole hearing for three years was arbitrary.  (Pet. at 25-26.)

21       (5)  Petitioner was denied his Fourteenth Amendment right to due process because the

22   Board of Parole Hearings has a policy of denying parole to all inmates convicted of murdering

23   children.  (Pet. at 26.)

24       (6)  The "some evidence" standard of Superintendent of the Mass. Corr. Inst. v. Hill, 472

25   U.S. 445 (1985), should not be applied in this case.  (Pet. at 26-27.)

26   / / /

27   / / /

28   / / /

06cv2489

# V.

## **DISCUSSION**

For the following reasons, the Court finds that Petitioner is not entitled to relief as to any claim presented in the Petition. Accordingly, the Court recommends the Petition be denied.

**A.    Standard of Review.**

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. An unreasonable application may also be found, "if the state court either unreasonably extends a legal principle

1   from [Supreme Court] precedent to a new context where it should not apply or unreasonably

2   refuses to extend that principle to a new context where it should apply." Id.

3       "[A] federal habeas court may not issue the writ simply because the court concludes in

4   its independent judgment that the relevant state-court decision applied clearly established federal

5   law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."

6   Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

7   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United

8   States Supreme] Court's decisions." Williams, 529 U.S. at 412.

9       Habeas relief is also available if the state court's adjudication of a claim "resulted in a

10  decision that was based on an unreasonable determination of the facts in light of the evidence

11  presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this

12  provision, Petitioner must demonstrate that the factual findings upon which the state court's

13  adjudication of his claims rest, assuming they rest on a factual determination, are objectively

14  unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

15  **B.    Claim One.**

16      In claim one, Petitioner contends he was denied his Fourteenth Amendment right to due

17  process because the grounds recited by the Panel to find him unsuitable for parole, and the

18  findings used to support those grounds, were arbitrary, unsupported by any evidence, inapposite

19  to the record, inherent in all second degree murders, and/or irrelevant to Petitioner's current

20  parole risk. (Pet. at 7-9.) Respondent contends that clearly established United States Supreme

21  Court precedent, in particular Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442

22  U.S. 1 (1979), provides that the only Fourteenth Amendment due process protection a state

23  prisoner has in the context of parole review is an opportunity to be heard and a decision

24  informing him or her of the reasons why he or she did not qualify for parole. (Ans. at 14.) Thus,

25  Respondent argues, because Petitioner was afforded these protections, he received all the process

26  he was due, and the adjudication of his claim by the state court was neither contrary to, nor

27  involved an unreasonable application of, clearly established federal law. (Id.) Respondent

28  acknowledges that Ninth Circuit precedent provides additional procedural safeguards, but

1    contends that this Court is not bound by those decisions, and that even if it were, Petitioner is

2    still not entitled to habeas relief.  (Id. at 14-19.)

3           Petitioner replies that he has rights secured by California's parole statutes and regulations

4    which are protected by the Fourteenth Amendment's Due Process Clause, including the right to

5    counsel, to an impartial panel, and to present evidence on his own behalf.  (Traverse at 3.)  He

6    also contends that United States Supreme Court, Ninth Circuit and California authorities

7    emphatically require the Panel's decision to be based on findings supported by at least some

8    reliable evidence which demonstrates that Petitioner's release on parole currently poses an

9    unreasonable risk of danger to the public safety.  (Id. at 3-4.)

10          Petitioner presented claim one to the state supreme court in a petition for review of the

11   denial of his appellate court habeas petition, in which he also presented claim one.  (Lodgment

12   No. 11 at 7-13.)  The petition for review was summarily denied without citation of authority or

13   a statement of reasoning.  (Lodgment No. 12.)  In Ylst v. Nunnemaker, 501 U.S. 797, 804

14   (1991), the Court adopted a presumption which gives no effect to unexplained state court orders

15   but "looks through" them to the last reasoned state court decision.  The Court will therefore look

16   through the silent denial by the state supreme court to the appellate court opinion, which denied

17   Petitioner's claim stating:

18          The Court has read and considered the petition for writ of habeas corpus,
             filed July 25, 2006.  The petition is denied.  There is some evidence to support the
19          Board's decision.  (In re Rosenkrantz (2002) 29 Cal.4th 616, 667.)

20   (Lodgment No. 10, In re Ouellette, No. B192526, slip op. at 1 (Cal.App.Ct. Aug. 9, 2006).)

21          Clearly established federal law provides that Petitioner may demonstrate a procedural due

22   process violation by showing that: (1) a federally-protected life, liberty or property interest exists

23   and has been subject to interference by the state; and (2) the procedures attendant upon the

24   deprivation of that interest were constitutionally insufficient.  Kentucky Dept. of Corrections v.

25   Thompson, 490 U.S. 454, 460 (1989).  In Greenholtz v. Inmates of Nebraska Penal and Corr.

26   Complex, 442 U.S. 1 (1979), the Supreme Court found that the expectancy of release provided

27   by a Nebraska parole statute "is entitled to some measure of constitutional protection," but stated

28   that "we emphasize that this statute has unique structure and language and thus whether any

other state statute provides a protectible entitlement must be decided on a case-by-case basis." Id. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 377-78 (1987) (holding that mandatory language in Montana parole statute, like the Nebraska statute, created a presumption that parole will be granted, thereby giving rise to a protected liberty interest). The Greenholtz Court further held that when an inmate is afforded "an opportunity to be heard" at a state parole hearing, and is informed "in what respects he falls short of qualifying for parole," the inmate has been given all "the process which is due." Greenholtz, 442 U.S. at 16.

The Ninth Circuit has applied Greenholtz and Allen to find that mandatory language in the California parole statute (Cal. Penal Code § 3041), "gives rise to a cognizable liberty interest in release on parole," McQuillion v. Duncan, 306 F.3d 895, 902 (2002), which is "created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003). After McQuillion and Biggs were decided, the California Supreme Court held that the language in Cal. Penal Code § 3041 does not establish a mandatory duty to set a release date for indeterminate life inmates. In re Dannenberg, 34 Cal.4th 1061, 1087-88 (2005). However, in Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006), the Ninth Circuit held that California prisoners continue to have the liberty interest in parole recognized in McQuillion and Biggs even after In re Dannenberg. The Sass Court found that In re Dannenberg addressed only the narrow issue as to whether the parole board must engage in a comparative proportionality analysis in setting parole release dates pursuant to Cal. Penal Code § 3041(a) before determining whether an inmate is suitable for parole under § 3041(b), but that the federally-protected liberty interest in a finding of suitability for parole under § 3041(b), which is the liberty interest at issue in the instant case, remains clearly established within the meaning of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Sass, 461 F.3d at 1127-28.

In Superintendent of the Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the revocation of good-time prison custody credits comports with the minimum requirements of due process only when the findings of the prison disciplinary board are supported by some evidence in the record. Id. at 455-56. The Ninth Circuit has held that the

<u>Hill</u> standard applies to state parole proceedings, "because 'both directly affect the duration of the prison term.'" <u>Sass</u>, 461 F.3d at 1128, <u>quoting</u> <u>Jancsek v. Oregon Board of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987). The <u>Sass</u> Court thus held that due process requirements are satisfied if "some evidence" exists in the record to support the parole board's decision. <u>Sass</u>, 461 F.3d at 1128. In applying this standard, the Court stated:

> To determine whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

<u>Id.</u>, quoting <u>Hill</u>, 472 U.S. at 455-56.

The evidence relied upon by the parole board "must have sufficient indicia of reliability," and "continued reliance in the future on an unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." <u>Biggs</u>, 334 F.3d at 915-17. The Ninth Circuit has recently reiterated that the <u>Greenholtz</u>, <u>Allen</u> and <u>Hill</u> standards are clearly established federal law for AEDPA purposes applicable to parole hearings such as the one at issue here. <u>Irons v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007).

Respondent contends that Petitioner has no federally-protected liberty interest in parole, and argues that even if he does, only the "opportunity to be heard" and "statement of reasons for the denial" requirements of <u>Greehholtz</u> constitute clearly established federal law applicable to state parole proceedings. (Ans. at 14.) Respondent acknowledges that the Ninth Circuit has already decided these issues in <u>Sass</u> and <u>Irons</u>, but contends that intervening United States Supreme Court authority has effectively overruled those cases. (<u>Id.</u>) Specifically, Respondent argues that <u>Carey v. Musladin</u>, 549 U.S. ___, 127 S.Ct. 649 (2006), impliedly overruled the Ninth Circuit's extension of the "some evidence" rule of <u>Hill</u> from the prison disciplinary context to the parole hearing context. After Respondent filed the Answer, the Ninth Circuit explicitly rejected that argument in <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008). The Ninth Circuit in <u>Hayward</u>, as in <u>Irons</u>, reiterated that clearly established federal law provides that mandatory language in the California parole statute creates a federally-protected liberty interest

in parole.  Id. at 542.  The Court in Hayward also clarified that if the state court decision upholding the Panel's finding of unsuitability is supported by "some evidence" in the record, a federal habeas court must examine that decision in order to determine whether it constituted an unreasonable application of the "some evidence" standard articulated in Hill.  Id.

Petitioner contends that the findings used by the Panel to support the grounds for denial of parole were arbitrary, unsupported by any evidence, inapposite to the record, inherent in all second degree murders, and/or irrelevant to Petitioner's current parole risk.  (Pet. at 7-9.)  He contends that the evidence in the record indicates that he would present a low risk to public safety if released, and that the denial of his claim by the state courts violates due process because it flunks the "some evidence test."  (Id.)

The grounds stated by the Panel for finding Petitioner unsuitable for parole, as quoted above, included, as the "main reason," Petitioner's commitment offense, which it found to have been "especially heinous . . . cruel [and] . . . callous."  (Lodgment No. 4 at 79.)  Other grounds included Petitioner's "unstable social history which includes an extensive use of methamphetamine as well as the use of marijuana," and "an arrest for vehicle theft."  (Id. at 84.) Although it is clear from the record that some evidence supports the findings regarding the seriousness of the commitment offense and Petitioner's unstable social history, the Ninth Circuit has indicated that application of the "some evidence" standard does not turn on "whether some evidence supports the reasons [cited] for denying parole, but whether some evidence indicates a parolee's release unreasonable endangers public safety.  Some evidence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety."  Hayward, 512 F.3d at 543.  "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board."  Sass, 461 F.3d at 1128, quoting Hill, 472 U.S. at 455-56.  Thus, this Court must determine whether there is some evidence in the record to support the Panel's determination that Petitioner's release would unreasonably endanger public safety.[1]

---

[1] The state superior court, in denying habeas relief, stated that under California law Petitioner's arrest for vehicle theft was not a factor which demonstrates "some evidence" for a finding of parole unsuitability.  See Lodgment No. 8, In re Ouellette, No. BH003807, slip op. at 2, citing People v.

The Court finds that there is sufficient evidence in the record to support the finding that Petitioner would pose an unreasonable danger to public safety if released on parole. First and foremost is Petitioner's commitment offense. As the Panel noted, the "offense was carried out in an exceptionally cruel, callous, and heinous manner," and involved a vulnerable victim, in that the "crime involved the beating of a two-and-a-half-year-old child over an extended period of time resulting in significant and fatal injuries to that child." (Lodgment No. 4 at 82.) The Panel explicitly found that:

> The panel makes the following finding, sir. And that is that you need further therapy and self help to come to terms with the underlying cause of the commitment offense.
>
> And that it is the opinion of this panel that you have not sufficiently demonstrated insight or remorse based on your demeanor, based on your body language, based on some of the statements that you made in regards to responses to our questions as well as to by what we perceive to be a lack of empathy on your part for the victim.
>
> And that during today's hearing, you – you had the opportunity to express your empathy for this victim, and based on your – again, your demeanor and your body language and the statements you've made, we feel that your empathy and your insight and your remorse is limited.
>
> We'd also like to note for the record that when a picture was held up of the deceased child by the District Attorney, there was absolutely no reaction from you which further played into our belief that you do not have sufficient remorse and insight into this crime.

(Lodgment No. 4 at 85-86.)

Petitioner's case is therefore distinguishable from Hayward, where the commitment offense had been committed nearly twenty-five years prior to the parole hearing at issue, which was Hayward's eleventh parole hearing, was committed based on provocation by threat to or assault on Hayward's girlfriend, and Hayward had "accepted responsibility for his crime and does not seek to minimize its impact." Hayward, 512 F.3d at 544. Here, in contrast, Petitioner committed the offense only twelve years before his hearing, which was his second parole

---

Calloway, 37 Cal.App.3d 905 (1974) (holding that arrests alone are not reliable evidence that an accused committed the crimes charged). There is no indication that the state appellate court relied on Petitioner's arrest in finding that some evidence supported the Panel's finding, and this Court will not consider that factor in determining whether the appellate court's opinion was contrary to or involved an unreasonable application of clearly established federal law.

06cv2489

hearing, and has, in the opinion of the Panel, failed to demonstrate empathy for the victim or demonstrate remorse for his crime. A failure to show remorse for such a cruel and heinous crime as the murder of a small child by physical abuse, and the failure to possess empathy for such a vulnerable victim, constitutes some evidence in support of the Panel's conclusion that Petitioner would pose an unreasonable risk to public safety if released.

Petitioner argues that because the state appellate court, or the state superior court for that matter, did not cite a shred of evidence suggesting that he would pose any risk to public safety if paroled, and did not address his Constitutional claims, the "controlling state court decision," whichever it may be, is patently unreasonable and contains no application of facts and law, and is therefore contrary to Greenholtz and Hill, both of which require the evidence to be specified by the state courts, and is therefore not entitled to any deference under AEDPA. (Traverse at 7.) The Court recommends rejecting this contention. The Supreme Court in Greenholtz and Hill set forth standards regarding minimum due process protections for prisoners in parole and disciplinary hearings respectively, but did not establish requirements for state court review of the decisions of the parole or disciplinary boards. Petitioner does not cite controlling authority which requires the state courts to set forth specific facts supporting their findings that some evidence supports the Parole Board's decision. See e.g. Luckenbach Steamship Co. v. United States, 272 U.S. 533, 536 (1926) ("[t]he well-settled rule applies that an appellate review is not essential to due process of law, but is a matter of grace.") Rather, this Court is bound by Ninth Circuit precedent which requires a federal habeas court to review decisions, such as the one by the appellate court here, to determine whether the appellate court's determination that "some evidence" exists in the record to support the findings of the Parole Board, is actually supported by "some evidence" in the record that the habeas petitioner poses an unreasonable risk to public safety if released on parole. See Hayward, 512 F.3d at 540 (appellate court "found that the Governor's decision to deny parole was supported by 'some evidence.'"); Irons, 505 F.3d at 850 ("The superior court denied the petition, finding that the Board's decision was supported by 'some evidence' and thus did not violate due process. . . . [and] the California Court of Appeal and the California Supreme Court issued summary denials."). In Sass, the Court stated that

1   "Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody

2   pursuant to a state court judgment, even when the petitioner is not challenging his underlying

3   state court conviction.' White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Therefore,

4   we review Sass' habeas petition under the deferential standards of [AEDPA]." Sass, 461 F.3d

5   at 1126-27.

6       The record here demonstrates Petitioner's repeated inability to account for the reason why

7   he committed the crime, at one moment refusing to blame his drug use, the next moment stating

8   that drug abuse was his only excuse, and eventually stating he had no excuse for killing the

9   victim.  (See id. at 50-59.)  Even Petitioner's responses to questions asked by his own attorney

10  as to what insight he has into the crime, and to speak to any feelings of remorse, support the

11  Panel's findings that Petitioner was unable to demonstrate insight or remorse.  (Id. at 66-67.)

12  Petitioner showed a remarkable selfishness regarding his feelings in this regard, as is evident

13  from the following passage:

14      Q.  How do you feel about this crime today, sir?
        A.  I'm ashamed and I'm embarrassed.
15      Q.  Is there anything else you'd like to add with regards to the crime, sir?
        A.  No, ma'am.

16

17  (Id. at 15-16.)

18      Thus, the Panel's conclusion that Petitioner's level or remorse for his crimes and empathy

19  for his victim is supported by the record.  Petitioner is correct that the psychological report states

20  that, in the opinion of the staff psychologist, Petitioner's "level of insight, remorse and empathy

21  are very impressive. In particular, his level of remorse and empathy appear to exceed what you

22  normally observe in this type of case or with [Board of Prison Terms] evaluations in general."

23  (Pet. Ex. C at 5.)  Petitioner also contends that the findings of insufficient remorse and empathy

24  were made in connection to the decision to defer the next hearing for three years, and not in

25  connection to whether he currently poses an unreasonable risk to the public safety, and are based

26  on speculation by the Panel, not facts.  He argues that he is a stoic person, and the untrained

27  Panel's reading of his body language as evincing a lack of remorse does not supercede the

28  trained psychologist's evaluation. (Traverse at 9-10.)  However, the fact that there is evidence

in the record that Petitioner's levels of remorse and empathy appear, in the opinion of the staff psychologist, to exceed that which is normally observed in prisoners, does not override the fact that some evidence in the record, as set forth above, supports the Panel's determination that Petitioner did not possess an acceptable level of insight, remorse or empathy.  Sass, 461 F.3d at 1128 ("The relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board."), quoting Hill, 472 U.S. at 455-56.  Even if it were possible to conclude that the psychologist's opinion is reasonable, Petitioner is not entitled to federal habeas relief because the state court's determination that some evidence exists to support the Panel's conclusion in this regard is also reasonable.  See Early v. Packer, 537 U.S. 3, 10 (2002) (stating that despite the existence of other reasonable conclusions, where, "it is at least reasonable to conclude that [the state court's conclusion was reasonable] . . . the state court's determination to that effect must stand.")

The Panel next stated that the "other thing that we did take into consideration in denying you today is your unstable social history which includes an extensive use of methamphetamine as well as the use of marijuana."  (Lodgment No. 4 at 80.)  Petitioner contends that these findings are not supported by the record.  (Pet. at 9.)  He contends that his history of substance abuse does not equate to an unstable social history, which he contends is defined under California law as "a history of unstable or tumultuous relationships with others," and contends that he has good and longstanding relationships with his mother, siblings, wife and children. (Id.; Traverse at 8-9.)

The probation officer's report indicates that Petitioner first used marijuana at age 14, that he admitted using marijuana on the weekends from high school until one month prior to his arrest, and that he used methamphetamine almost every day for one and one-half years prior to his arrest. (Lodgment No. 2 at 6.) Petitioner acknowledged that he had used marijuana regularly since high school, and even corrected the Panel by stating that he began using methamphetamine in high school, much sooner than the probation officer's report indicated.  (Lodgment No. 4 at 22-24.)  As the Panel pointed out, the psychological report identified as a significant risk factor for future violence a possible return to methamphetamine use.  (Id. at 54.)  Moreover, although

the record supports Petitioner's argument that he has a stable relationship with his mother, his half-brother and his adopted sister, Petitioner admitted that he has no relationship with his father and his half-sister (id. at 19), and there is no evidence that Petitioner has a stable relationship with a wife and children as alleged in the Petition and argued in the Traverse. Rather, the psychological evaluation states that Petitioner has never been married. (Pet. Ex. C at 1.) To the extent Petitioner is referring to the woman and child he was cohabiting with at the time of the offense, there can be no question that Petitioner's relationship with them was unstable and tumultuous. Petitioner admitted that he "fought all the time" with the victim's mother (Lodgment No. 4 at 69), and admitted to murdering her child following systematic abuse. The record therefore supports the findings that Petitioner has a history of drug use and unstable relationships. It is also clear that it was the unstable nature of his relationship with the victim and her mother, coupled with Petitioner's drug use, that led to the violent murder of the victim. The psychological report forecasts a possible return to violence if Petitioner returns to drug use, and Petitioner's history of drug use and unstable relationships is therefore some evidence that he poses an unreasonable risk to the public safety if released.

Thus, the factors relied on by the Panel are not arbitrary, unsupported by any evidence, inapposite to the record, and/or irrelevant to Petitioner's current parole risk as alleged by Petitioner. Neither are they inherent in all second degree murders, because quite obviously not all second degree murders involve the death of a small child by a drug abusing cohabitant of the victim's mother who fails to empathize with the victim or show remorse twelve years after murdering the child through systematic abuse. In his Traverse, Petitioner argues that the findings of the Panel are based on speculation, and are not supported by evidence in the record, and were made in connection to the decision to defer the next parole hearing for three years, and not necessarily to find that he currently poses an unreasonable risk to the public safety. (Traverse at 8-9.) He argues that he is a stoic person, and the untrained Panel's reading of his body language as evincing a lack of remorse does not supercede the trained psychologist's evaluation. (Id.) However, as discussed above, the Court finds that the Panel's findings are supported by evidence in the record, and are not based on speculation.

Because the factors used by the Panel are supported by the record, and the evidence has sufficient indicia of reliability, there is sufficient evidence in the record to support the Panel's determination that Petitioner's release unreasonably endangers public safety, and therefore no due process violation occurred.  Irons, 505 F.3d at 851; Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915; Jancsek, 833 F.2d at 1390.  Accordingly, the Court finds that the appellate court's adjudication of Petitioner's due process claim, on the basis that the parole board's unsuitability determination was supported by "some evidence," is neither contrary to, nor an unreasonable application of, clearly established federal law.

## C.     Claim Two.

Petitioner contends in claim two that he was denied his Fourteenth Amendment right to due process because the factors relied upon by the Panel apply to special circumstance first degree murder cases, because the Panel established no nexus to Petitioner's current parole risk, and because the findings lacked the requisite preponderance of the evidence showing Petitioner posed an unreasonable risk of danger to the public safety.  (Pet. at 9-16.)  Respondent contended in the motion to dismiss that this claim was unexhausted because it had not been presented in the state habeas petitions.  (Resp.'s MTD [Doc. No. 6] at 5.)  In his opposition to Respondent's motion to dismiss, Petitioner contended that this was not a separate claim as such, but merely additional argument in support of claim one.  (Pet.'s Opp. [Doc. No. 8] at 2-4.)

In denying Respondent's motion to dismiss, the Court found that claim two had been presented to the state supreme court in a habeas petition, and was therefore exhausted, although Petitioner had slightly altered the language of the claim when presenting it here.  (See 11/26/07 Order [Doc. No. 15] at 7.)  The Court identified claim two as contending that Petitioner was denied due process because: (1) the Panel decision did not satisfy the preponderance of the evidence standard; (2) there was no connection or nexus between the facts of the commitment offense and Petitioner's current risk to public safety; and (3) some of the factors relied on by the Panel are typically applied only to special circumstance first degree murders.  (Id.)  The Court will therefore review each of these contentions in order to determine whether the state appellate court's denial of the claim, on the basis that some evidence supports the Panel's decision, was

1   contrary to, or involved an unreasonable application of, clearly established federal law, or was

2   based on an unreasonable determination of the facts.

3          Petitioner argues that California law requires the Panel's decision to be based on good

4   cause, which he contends is defined as "a preponderance of the evidence that there is a factual

5   basis and good reason for the decision made." (Pet. at 10.)  Thus, he contends, even if the

6   Panel's decision is supported by "some evidence," as the appellate court found, it would not

7   satisfy California law if it was not also supported by a preponderance of the evidence. (Id.)

8   Petitioner contends that of the six circumstances tending to show unsuitability for parole codified

9   in California regulations, and the nine circumstances tending to show suitability, twelve favored

10  a finding of suitability, two were not applicable, and only one, the circumstances of the offense,

11  arguably favored unsuitability. (Id.)  Thus, he contends, under a preponderance of the evidence

12  standard the factors favored a finding of suitability for parole, the Panel's conclusion of

13  unsuitability was made in violation of California law, and as such violated federal due process

14  because it was fundamentally unfair. (Id.)

15         A claim challenging the Panel's decision or the appellate court's opinion on state law

16  grounds is not cognizable on federal habeas.  See 28 U.S.C.A. § 2254(a) (West 2006) ("a district

17  court shall entertain an application for a writ of habeas corpus in behalf of a person in custody

18  pursuant to the judgment of a State court only on the ground that he is in custody in violation of

19  the Constitution or laws or treaties of the United States."); Estelle v. McGuire, 502 U.S. 62, 67-

20  68 (1991)  (holding that federal habeas relief is not available merely for an alleged error in the

21  interpretation or application of state law).  However, as set forth above, the United States

22  Supreme Court and the Ninth Circuit have held that clearly established federal law provides that

23  a liberty interest protected by the Fourteenth Amendment has been created by mandatory

24  language in California's parole statute, and that due process is satisfied if some evidence in the

25  record supports the Panel's finding.  That standard has been satisfied here for the reasons set

26  forth above with respect to claim one.   Thus, to the extent this aspect of claim two presents a

27  state law claim, it is not cognizable on federal habeas.  To the extent Petitioner contends a

28  federal due process violation occurred because the preponderance of the evidence weighed in

favor of his suitability for parole, he is not entitled to <u>federal</u> habeas relief because, as set forth above, the state appellate court opinion finding that some evidence existed in the record to support the Panel's decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  Even to the extent Petitioner contends the state court's decision was based on an unreasonable determination of the facts, Petitioner has not demonstrated that the factual findings upon which the state court's adjudication of his claims actually rest are objectively unreasonable.  <u>Miller-El</u>, 537 U.S. at 340.

Petitioner next contends there was no connection, or nexus, between the facts of the commitment offense and his current risk to public safety, and that no such connection was cited by the Panel. (Pet. at 13-14.) Petitioner cites a number of federal district court cases finding that continued reliance on the facts of the commitment offense does not satisfy the some evidence standard.  (Traverse at 12-13.)  He argues that the Panel did not explain what it was about Petitioner's commitment offense which translates to a current risk to public safety.  (<u>Id.</u> at 13-16.)

As discussed above, the Panel found the commitment offense to have been "especially heinous, cruel and callous," and found that Petitioner did not show remorse for or insight into his actions, and did not show empathy for the victim.  The Panel also relied on Petitioner's unstable social history and his drug use.  The Panel commended Petitioner for his behavior while incarcerated, which included his having been disciplinary free, achieving certification as a forklift operator, welder and engine service and repair, as well as for his participation in self-help and substance abuse programs. (Lodgment No. 4 at 86.)  The Panel stated, however, that: "these positive aspects of your behavior do not outweigh the factors of unsuitability, . . ."  (<u>Id.</u>)  As discussed with respect to claim one, there is a nexus between Petitioner's danger to society if released and the findings that he has an unstable social history marked by drug use, and lacked remorse or empathy twelve years after committing such a cruel and heinous crime.  The Court therefore recommends denying this aspect of claim two.

Petitioner next contends that the "especially heinous, atrocious or cruel" factors relied on by the Panel were taken from California Penal Code section 190.2(a)(14), which is a special

1   circumstance used to justify imposition of the death penalty or life without the possibility of

2   parole.  (Pet. at 12-13.)  He contends the use of these factors to find him unsuitable for parole

3   denied him due process because his offense was not in that category.  (Id. at 13.)

4       The Panel found that the offense "was carried out in a dispassionate manner," and that

5   there was "no motive for this crime."  (Lodgment No. 4 at 82.)  Theses findings are consistent

6   with the criteria under California law for a finding of unsuitability in the present context,

7   including the fact that the offense "was carried out in a dispassionate and calculated manner,"

8   and "the motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code

9   Regs, Title 15, § 2402(c).  Even to the extent the Panel relied on additional factors taken from

10  the special circumstance in violation of California law, that is an issue of state law only, and is

11  not cognizable on federal habeas.  To the extent this aspect of claim two presents a federal due

12  process claim predicated on an arbitrary finding of the Panel, it is without merit for the reasons

13  discussed above with respect to claim one.  The Panel's findings were not arbitrary and were

14  supported by some evidence.

15      The Court finds that the adjudication of claim two by the state courts was neither contrary

16  to, nor involved an unreasonable application of, clearly established federal law, and was not

17  based on an unreasonable determination of the facts.  The Court therefore recommends denial

18  of habeas relief as to claim two.

19      **D.    Claim Three.**

20      Petitioner contends in claim three that he was denied his Fourteenth Amendment right to

21  due process because the Panel relied on the unchanging facts of his commitment offense to find

22  him unsuitable for parole.  (Pet. at 17-25)  He argues that the continued reliance on the facts of

23  his commitment offense has essentially transmuted his sentence to one of life without parole

24  unless some future Panel or Governor arbitrarily decides, before he dies in prison, that all of the

25  previous Panels were wrong.  (Traverse at 16-20.)  Respondent contends that neither California

26  law nor clearly established federal law limits the Panel's ability to rely solely on the unchanging

27  facts of the commitment offense.  (Ans. at 19-20.)

28  / / /

1    Recently, in <u>Hayward</u>, the Ninth Circuit reiterated that a "continued reliance . . . on an
2    unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs
3    contrary to the rehabilitative goals espoused by the prison system and could result in a due
4    process violation." <u>Hayward</u>, 512 F.3d at 545, quoting <u>Biggs</u>, 334 F.3d at 915. The Court was
5    careful to note that "we do recognize that certain conviction offenses may be so 'heinous,
6    atrocious or cruel' that a prisoner's due process rights might not be violated if he or she were
7    denied parole solely on the basis of the nature of the conviction alone." <u>Hayward</u>, 512 F.3d at
8    547 n.10.

9    The Panel here did not rely on static factors alone. As set forth above, the Panel relied
10   on the circumstances of Petitioner's offense, his past drug use and history of unstable
11   relationships, which are arguably static factors. However, the Panel also relied on non-static
12   factors, including the fact that twelve years after the crime Petitioner did not show adequate
13   remorse for the crime or sufficient empathy for the victim. In addition, the Panel considered the
14   psychological report which identified Petitioner's potential return to drug use as a significant risk
15   factor for future violence. The Panel also took into consideration evidence in the record which
16   was favorable to Petitioner, including the psychological report, stable relationships with his
17   mother, half-brother and adopted sister, and his positive achievements while incarcerated.
18   Although the Panel commended Petitioner on his behavior and accomplishments while
19   incarcerated, they found that they did not outweigh the factors showing an unsuitability for
20   parole. Petitioner's contention that the parole board relied only on static factors is simply
21   incorrect.

22   Accordingly, the Court finds that the adjudication of claim three by the state courts, on
23   the basis that due process was satisfied because some evidence supported the Panel's decision,
24   did not involve an unreasonable application of clearly established federal law, and was not based
25   on an unreasonable determination of the facts. The Court therefore recommends denial of
26   habeas relief as to claim three.

27   / / /

28   / / /

**E.    Claim Four.**

Petitioner contends in claim four that he was denied his Fourteenth Amendment right to due process because the Parole Panel's decision to defer his next parole hearing for three years was arbitrary. (Pet. at 25-26.) Specifically, Petitioner contends that: (1) he is suitable for parole release for the reasons set forth in support of his other claims, and there was therefore no justification for anything other than a one-year denial; (2) the Panel relied on the same inadequate findings used to support the unsuitability conclusion in deciding to defer the next hearing for three years, and that decision was inadequate for the reasons set forth in support of Petitioner's other claims; and (3) California law requires the Parole Board to use different criteria when determining whether an inmate would likely be found suitable in one year than the reasons supporting a finding of unsuitability. (Id.; Traverse at 20-21.)

Respondent contends this claim is based solely on state law and as such is not cognizable on federal habeas. (Ans. at 20.) Respondent also contends that state law provides that the Parole Board is statutorily vested with the authority to delay a subsequent hearing for up to five years after deciding not to set a parole date for a prisoner convicted of murder. (Id.)

This claim was presented to the state supreme court in a petition for review of the denial of his appellate court habeas petition, in which he also presented the claim. (Lodgment No. 11 at 17.) The petition for review was summarily denied without citation of authority or a statement of reasoning (Lodgment No. 12), and the Court will look through to the last reasoned decision as to this claim. Ylst, 501 U.S. at 804. The appellate court did not appear to address this claim, stating only that some evidence supported the Panel's decision. (Lodgment No. 10.) The superior court did address the claim, however, stating that:

> The Board identified the reasons which justify petitioner's setting of his next suitability hearing in three years. Petitioner failed to show that this decision was arbitrary and abrogated due process. (See *In re Jackson* (1985) 39 Cal.3d 464, 479.)

(Lodgment No. 8, In re Ouellette, No. BH003807, slip op. at 3 (Cal.Sup.Ct July 10, 2006).)

To the extent this claim presents a question of state law only, it is not cognizable on federal habeas. Estelle, 502 U.S. at 67-68. To the extent Petitioner contends the decision was

arbitrary, the record does not support that claim.  The Panel gave an explicit and lengthy discussion of the reasons for their decision to defer the next parole hearing for three years. (Lodgment No. 4 at 82-86.)  Although Petitioner contends California law was violated because the reasons given for deferring the next hearing for three years were the same as those for finding him unsuitable, this Court can entertain an application for a writ of habeas corpus "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a) (West 2006).  Because Petitioner has not identified such a violation with respect to the decision to defer his next parole hearing for three years, the Court finds that Petitioner is not entitled to habeas relief as to claim four.  Even assuming this claim raised a federal due process violation on the basis that the decision was arbitrary, the Court finds that the reasons given by the Panel were supported by the record for the same reasons discussed above with respect to claims one and two.  Thus, the state court adjudication of the claim is neither contrary to nor involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.  The Court therefore recommends denying habeas relief at to claim four.

### F.    Claim Five.

Petitioner alleges in claim five that he was denied his Fourteenth Amendment right to due process because the Board of Parole Hearings has a policy of denying parole to all inmates convicted of murdering children.  (Pet. at 26.)  He states that he alleged in his state habeas petitions that, subject to discovery, he could show that the Board has such a policy, but that the claim was ignored by the state courts.  (Id.)  Respondent does not address this issue.

This claim was presented to the state supreme court in a petition for review.  (Lodgment No. 11 at 18-19.)  The claim was also presented in the appellate court habeas petition, but not in the superior court habeas petition.  (Lodgment No. 9 at 19; Lodgment No. 7.)  As set forth above, the state supreme court denied the petition without a statement of reasoning, and the appellate court denied the petition on the basis that some evidence supported the Panel's decision.

/ / /

Even assuming Petitioner could, with sufficient discovery, make a showing that the Board of Parole Hearings has a policy of denying parole to inmates who have murdered children, this Court must nevertheless defer to the finding of the appellate court that the parole board <u>actually relied</u> upon the factors stated to make the unsuitability finding.  See <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981) ("[The] interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts."); 28 U.S.C.A. § 2254(e)(1) (West 2006) (". . . a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")  The Ninth Circuit has held that the "clear and convincing evidence" requirement of § 2254(e)(1) only applies to new evidence presented in federal court, thereby leaving in place the pre-AEDPA standards for determining whether a state court finding is to be presumed correct.  <u>Kesser v. Cambra</u>, 465 F.3d 351, 358 (9th Cir. 2006); <u>Taylor v. Maddox</u>, 366 F.3d 992, 1000 (9th Cir. 2004).  Under that standard, "state court factual findings are 'entitled to a presumption of correctness unless they are not fairly supported by the record.'"  <u>Frierson v. Woodford</u>, 463 F.3d 982, 988 (9th Cir. 2006), quoting <u>Silva v. Woodford</u>, 279 F.3d 825, 835 (9th Cir. 2002); <u>see also</u> <u>Miller-El</u>, 537 U.S. at 340 (in order to successfully challenge the factual findings upon which the state court's adjudication of a federal habeas petitioner's claim rests, the petitioner must demonstrate the findings are objectively unreasonable).

Here, the finding of the state appellate court is fairly supported by the record and is objectively reasonable, as are the findings by the Panel itself.  There is nothing whatsoever in the record to support Petitioner's contention that the decision of the Panel here was based on such a policy.  To the extent there is no lower state court opinion addressing this claim, the Court is required to conduct an independent review of the record in order to determine whether the state supreme court clearly erred in its application of controlling federal law when it denied the claim without a statement of reasoning.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002); <u>Greene v. Lambert</u>, 288 F.3d 1081, 1089 (9th Cir. 2002) ("(W)hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus

1   primarily on Supreme Court cases in deciding whether the state court's resolution of the case

2   constituted an unreasonable application of clearly established federal law.")  Even under an

3   independent review of the record as to this claim, it is clear, for the reasons discussed above with

4   respect to claims one and two, that the Panel's decision is supported by evidence which is

5   individually tailored to Petitioner, and there is no evidentiary support for Petitioner's contention

6   that the decision of the Panel was pretextual or otherwise contrived.

7       The Court finds that the state court's adjudication of claim five is neither contrary to, nor

8   involved an unreasonable application of, clearly established federal law, and is not based on an

9   unreasonable determination of the facts.  The Court therefore recommends that habeas relief be

10  denied as to claim five.

11      **G.   Claim Six.**

12      Finally, Petitioner contends in claim six that the "some evidence" standard of

13  Superintendent of the Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), should not be applied in this

14  case.  (Pet. at 26-27.)  Petitioner stated in his opposition to Respondent's motion to dismiss that

15  this aspect of the Petition is not a separate claim, but merely an additional argument suggesting

16  which standard of review to be used in review of the claims presented in this action.  (See

17  11/26/07 Order [Doc. No. 15] at 8-9.)  In the Traverse, Petitioner states that he will assume that

18  the some evidence standard will be applied by this Court.  (Traverse at 3 n. 1.)  As set forth

19  above, Ninth Circuit authority compels this Court to apply the "some evidence" standard to

20  Petitioner's due process claims.  Accordingly, the Court finds that habeas relief is not available

21  with respect to claim six.

22                              **VI.**

23                  **CONCLUSION AND RECOMMENDATION**

24      For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court

25  issue an Order: (1) approving and adopting this Amended Report and Recommendation; and (2)

26  directing that Judgment be entered denying the Petition.

27      **IT IS ORDERED** that no later than **March 31, 2007** any party to this action may file

28  written objections with the Court and serve a copy on all parties.  The document should be

captioned "Objections to Amended Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 15, 2007**. The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  February 29, 2008

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

CC:      HON. ROGER T. BENITEZ
         ALL PARTIES