# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MARK OUELLETTE, | CASE NO. 06CV2489 BEN (WMc) |
| --- | --- |
| Petitioner, | ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING PETITION |
| vs. | |
| ROBERT J. HERNANDEZ, | |
| Respondent. | |

## INTRODUCTION

Petitioner Mark Ouellette filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging a decision by the California Board of Parole Hearings ("Board") finding him unsuitable for parole. Dkt. No. 1. Magistrate Judge William McCurine, Jr. issued a thoughtful and thorough Report and Recommendation recommending the Petition be denied and Oullette filed objections.[1] Dkt. Nos. 22-23. The case was then stayed pending an en banc decision from the Ninth Circuit in *Hayward v. Marshall*. That decision has been issued and the stay is lifted. *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

A district judge "may accept, reject, or modify" the Report of a Magistrate Judge on a dispositive matter. FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). The court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. §

---

[1] The Magistrate Judge issued an initial Report and Recommendation after Oullette's deadline to file a Traverse had passed. However, the Magistrate Judge withdrew that initial Report, allowed Oullette to file his Traverse, and issued an amended Report which the Court considers here.

636(b)(1)(C); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). However, "[t]he statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d at 1121; *see also Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121.

Having reviewed the matter de novo and for the reasons that follow, the Report is **ADOPTED as modified** and the petition is **DENIED**.

## BACKGROUND

Oullette pled guilty to second degree murder and was sentenced to fifteen years to life in 1993. He plead guilty to killing his girlfriend's two-and-one-half year old son who was living with him. Oullette became eligible for parole on November 6, 2002. The Board found Oullette unsuitable for parole at his second parole eligibility hearing on August 10, 2005 and deferred his next parole hearing for three years. Oullette filed petitions with the state superior court, appellate court, and supreme court. All were denied.

The Board found Oullette unsuitable for parole based on: the exceptionally cruel, callous, and heinous manner that the two-and-one-half year old victim was beaten to death over an extended period of time; his lack of remorse and insight into his crime; and his unstable social history, including his extensive use of methamphetamine and marijuana. The Board considered Oullette's clean record while in custody, completion of certificate programs, participation in self help, and positive psychological evaluation, but ultimately determined these positive factors did not outweigh the factors for unsuitability and denied parole for three years.

## DISCUSSION

As outlined in the Report, federal habeas relief may only be granted when State court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding." 28 U.S.C. § 2254(d).

Since the Report was filed, the Ninth Circuit has clarified the legal standard for a federal habeas court reviewing a parole denial in California. *Hayward*, 603 F.3d 546. "There is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Hayward*, 603 F.3d at 559. However, there is a "right in California to parole in the absence of some evidence of one's future dangerousness to the public" and that parole scheme creates a liberty interest in parole that is entitled to protection under the federal Due Process clause. *Id.* at 561-63; *see also Pearson v. Muntz*, 606 F.3d 606, 608-609 (9th Cir. 2010) (applying *Hayward v. Marshall*). Accordingly, this Court must decide whether the California judicial decision approving the Board's decision finding Oullette unsuitable for parole was an "'unreasonable application' of . . . California's 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Pearson*, 606 F.3d at 608 (quoting *Hayward*, 603 F.3d at 563).

Here, the last reasoned state court decision denied Oullette's habeas petition. The petition was denied because the record contained "some evidence" to support the Board's finding that Oullette was unsuitable for parole and the Board was justified in setting his next hearing in three years. The state court relied on the Board's findings regarding the commitment offense and Oullette's unstable social history. This Court finds the decision was not an unreasonable application of California's some evidence requirement or based on an unreasonable determination of the facts in light of the evidence.

I.  **"Some Evidence" of Future Dangerousness**

The paramount consideration in suitability for parole in California is "whether the inmate currently poses a threat to public safety." *Cook v. Solis*, 606 F.3d 1206, 1214 (9th Cir. 2010) (citing *In re Lawrence*, 44 Cal. 4th 1181 (2008)); *see also Hayward*, 603 F.3d at 562 ("Under California law, denial of parole must be supported by 'some evidence' . . . of future dangerousness").[2] "The prisoner's aggravated offense does not establish current dangerousness *unless* the record also establishes that

---

[2] California's parole regulations also guide the Board's decision on parole suitability, and include whether the commitment offense was particularly "heinous, atrocious or cruel," a previous record of violence, unstable social history, psychological factors, institutional behavior, criminal history, signs of remorse, motivation for the crime, age, and plans for the future. 15 CAL. CODE REGS. TIT. 15, § 2402(c)-(d). These factors were considered by the Board.

- 3 -                                                                 06cv2489

something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state supports the inference of dangerousness." *Hayward,* 603 F.3d at 562 (citing *Lawrence,* 44 Cal. 4th at 1114) (emphasis added).

The Board's decision here meets the standard articulated in *Hayward.* Specifically, the Board found that Oullette's commitment offense was particularly heinous, cruel, and callous, that he lacked empathy, insight, or remorse for his crime, and he had an unstable social history, including extensive use of methamphetamine and marijuana.[3] The Board also took into account the factors favorable to Oullette, including a favorable psychological report, viable residential parole plans, obtaining valuable skills training while in custody, and remaining disciplinary free.

The Court will not recite every detail of the commitment offense because there can be absolutely no doubt about the callous, heinous, and cruel nature of it. By Oullette's own account at his hearing and by his confirmation of a description read to him at his hearing, he subjected a two-and-one-half year old child to abuse over a three month period of time. The child suffered extensive internal injuries, broken ribs, damage to his back, and body bruising. He was so fearful of Oullette that he stayed in his room for six to seven hour periods without eating or using the bathroom. The night Oullette killed the child, he put his hand over the child's face, shook him, and smothered him until he stopped crying. According to the autopsy report, the child died from multiple traumatic injuries occurring within the last month of the child's life. In finding the offense particularly heinous, callous, and cruel, the Board noted the offense was carried out in a dispassionate manner without motive against a victim who was particularly vulnerable because he was a child living under Oullette's care.

The Board also found that Oullette lacked insight into the reason for his crime and remorse for the crime. The Board noted that based on his demeanor, body language, and answers to questions Oullette lacked insight into his crime, remorse for the crime, and empathy for the victim. The Board specifically noted that when he was presented with a picture of the deceased child there was absolutely no reaction. This finding is also consistent with exchanges between Board members and Oullette

---

[3] The Board also considered Oullette's arrest for vehicle theft. The state court noted Oullette's prior arrest for vehicle theft alone did not constitute "some evidence" of unsuitability and could not "form the basis for 'some evidence' sufficient to be considered a factor in denying parole," however, the state court went on to conclude, as this Court does, that other factors supported the Board's determination of unsuitability.

during the hearing. When repeatedly questioned about why he killed the child, he could provide no insight beyond being under the influence of drugs. The Board was particularly skeptical because Oullette referred to rage he was feeling back then, but could not explain the source of it or why he released it on a vulnerable child. As the Board explained, Oullette was saying the right words, but the Board did not believe he developed sufficient remorse or insight as to why he committed the offense. *See Shaputis*, 44 Cal. 4th at 1260 n. 18.

An egregious commitment offense, like this one, when combined with a lack of insight and remorse provides sufficient evidence that a petitioner remains dangerous. *Id.* at 1259-60. This was a particularly heinous commitment offense. "This is not a case . . . in which the commitment offense was an isolated incident committed while petitioner was subject to emotional stress that was unusual or unlikely to recur," rather it was the culmination of ongoing "violent and brutalizing behavior" toward a child. *Shaputis*, 44 Cal. 4th at 1259 (contrasting *Lawrence*, 44 Cal. 4th at 1226, and *Shaputis*); *cf. Pirtle v. Cal. Bd. of Prison Terms*, — F.3d —, 2010 WL 2732888, at *5 (9th Cir. July 12, 2010) (victim was not terrorized or traumatized and did not suffer). This offense and Oullette's lack of remorse for and insight into the cause of the offense provide some evidence of Oullette's current dangerousness, but the Board also relied on his unstable social history.

In finding Oullette had an unstable social history, the Board emphasized Oullette's extensive use of methamphetamine and marijuana. This is consistent with Oullette's psychological report. The report, while positive, notes his only significant risk factor is his potential for return to methamphetamine dependence. It is also consistent with Oullette's testimony during the hearing. When questioned extensively by the Board about his reason for killing the child, his only explanation was his regular drug use.

The Court finds there was sufficient evidence of Oullette's future dangerousness to support the Board's decision and the state court's decision denying habeas relief was not an unreasonable application of California's some evidence requirement or based on an unreasonable determination of the facts in light of the evidence.

///

///

## II. Objections

Oullette's objections to the Report can be summarized as follows: (1) the Report found that the Board set forth evidence addressing Oullette's current dangerousness; (2) the Report re-weighed or considered evidence not set forth by the Board; and (3) the Report considered the limited number of years Oullette had served and his number of prior parole hearings. The Court has already addressed the first. As to the second, the Court has conducted a de novo review and limited its review to the evidence the Board considered. As to the third, "the passage of time" is an appropriate consideration in determining parole suitability, although it was not a significant factor in the Board's or this Court decision. *Shaputis*, 44 Cal. 4th at 1255; *see also Lawrence*, 44 Cal. 4th at 1225.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 foll. 28 U.S.C. § 2254. A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The standard for a certificate of appealability is lenient." A petitioner "need only show that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Hayward*, 603 F.3d at 553 ("something more than the absence of frivolity, but something less than a merits determination").

The Court **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason and there are no questions adequate to deserve encouragement.

## CONCLUSION

After a de novo review, the Court **ADOPTS** Judge McCurine's Report as modified. Oullette is not entitled to habeas relief and his Petition is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: July 23, 2010

Hon. Roger T. Benitez
United States District Court Judge